HONOLULU SAVINGS AND LOAN COMPANY, LIM-
ITED, A HAWAIIAN CORPORATION *v.* ALBERT
G. REED AND MARY C. ING.

NO. 2884.

ARGUED JUNE 25, 1953.                    DECIDED JULY 9, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

A suit in equity was filed on March 14, 1950, by the Honolulu Savings and Loan Company, Limited, assignee of Earl Frost Baker and Elizabeth Davidson Baker, on a note and mortgage securing the same, in the sum of $12,000 executed by Albert G. Reed and Mary C. Ing to the Bakers. This note and the mortgage were given to secure an ante-cedent debt of Reed to the Bakers.

Reed had been a real-estate agent representing the Bakers in the sale of certain lands and had failed to account for some $12,000 received by him. This note and mortgage were given to secure the debt.

The evidence shows that Miss Ing received no valuable consideration but that she executed the note and mortgage voluntarily after learning that Reed owed the money. She gave Reed a description of her land with the intention that he should have a mortgage drawn up to secure his debt to the Bakers. No coercion or threats whatever were made against Reed nor any coercion used against her.

After issue was joined, a demand for jury trial was made by Miss Ing under section 9648, Revised Laws of Hawaii 1945, which provides: "The judges of the several circuit courts shall have power at chambers within their respective jurisdictions, but subject to appeal to the circuit and supreme courts, according to law, as follows: * * *

"6. To select and impanel, subject to challenge for cause, by either party, a special jury of inquiry of idiocy, lunacy, or de ventre inspiciendo, or in *any other matter* to be tried before any of the judges at chambers, and they shall receive and act upon the verdict of such jury as equity and good conscience require; * * *" (Emphasis added.)

At the hearing four questions were made by respondent Ing relative to her liability: (1) whether she had executed

the note and mortgage; (2) whether the transaction was illegal and therefore void because it was entered into to shield respondent Reed from criminal prosecution; (3) whether Miss Ing received consideration for the execution of the note and mortgage; (4) whether the Honolulu Savings and Loan Company was the holder in due course.

After the hearing the court directed the jury to return a verdict for the petitioner against Reed and directed the jury "* * * that under the law and the evidence Mary Ing was not bound to pay to the Bakers the obligation set forth in the promissory note in evidence" and further instructed the jury to find for Miss Ing unless the Honolulu Savings and Loan Company was the holder in due course.

Although Miss Ing apparently fenced on the question as to whether she had actually executed this note and mortgage, the judge properly refused to submit this to the jury as before the case was concluded it unquestionably appeared that she did execute the same. Further, the judge found that the contract was not illegal nor entered into for the purpose of shielding Reed from criminal prosecution, this being shown by his direction to the jury to find against Reed. Apparently, in submitting only the question to the jury as to whether the Honolulu Savings and Loan was a holder in due course, the court was of the opinion that Miss Ing had not received consideration. The jury decided for Miss Ing, holding that the Honolulu Savings and Loan was not a holder in due course.

After the verdict petitioner's attorney (who was not the same attorney as the present attorney of record) attempted to reassign the note and mortgage to the Bakers, withdraw the petitioner and substitute therefor the Bakers as petitioners. This motion was properly refused by the trial judge.

A motion also was made by the petitioner for a new

trial and for judgment notwithstanding the verdict, which latter motion was granted and judgment entered against Miss Ing. From this decision and decree an appeal was made to this court.

The main point made by defendant in error is that where legal issues are involved the Seventh Amendment gives a right to trial by jury in a suit in equity and that the verdict of the jury is binding upon the court if sustained by more than a scintilla of evidence.

That the Seventh Amendment gives no right to a jury trial in a suit in equity, even though legal issues may be involved, is well settled over a long period of years and many decisions. This principle has been applied in numerous types of cases including the foreclosure of a mortgage. (This court ruled in *Re Guardianship of H. K. Ward,* 39 Haw. 39, 46, *aff'd* in *Ward* v. *Booth,* 197 F. [2d] 963, that the appointment of a guardian of an estate of an insane person is not a "suit at common law" and does not come within the Seventh Amendment preserving the right to trial by jury where the "value in controversy" exceeds $20, even though the value of the estate far exceeded this amount.)

In an early decision, *Kennedy* v. *I. C. & L. R. Co.,* 3 Fed. 97, where a receiver had been appointed in a suit to foreclose a mortgage on a railroad, and an engine ran over and killed plaintiff's wife, the court held that the plaintiff had no right to a jury trial; that the receiver could only be sued in a chancery court and the constitutional guarantee securing trial by jury does not apply to chancery court but, on the contrary, courts of chancery are and always have been invested with the prerogative of deciding the facts as well as the law in cases pending before them. In discussing various types of cases, the court said: "* * * So the remedy to collect a promissory note is at law, and

if thus sued the parties would be entitled to a trial by jury. But if it is secured, either by pledge or mortgage, and a bill is filed to subject the security, a court of chancery would have jurisdiction; and, being thus invested with equitable jurisdiction, it could decide any issue, legal or equitable, made in the case, ascertain the sum due, and enforce its finding by an appropriate decree. * * *"

A court of chancery has by reason of its nature and constitution ample power to decide every question of law or fact that comes before it in any suit over which it has jurisdiction. (19 Am. Jur., Equity, § 398, p. 272.) The constitutional guarantee of the right of the trial jury does not apply to suits in equity though it may, if it sees fit, submit to the jury issues of fact that may arise in the case. (19 Am. Jur., Equity, § 398, p. 272.) The common and better practice is to submit specific questions to be answered by the jury in the form of a special verdict. (19 Am. Jur., § 399, p. 273.)

While a jury's verdict or specific finding on an issue is entitled to much weight, it is advisory only, not conclusive. (19 Am. Jur., Equity, § 404, p. 277, citing cases.) To quote from merely a few of the numerous decisions of the United States Supreme Court upon this question:

"Equity courts may decide both fact and law, but they may, if they see fit, refer doubtful questions of fact to a jury. Findings of the kind, however, are not conclusive, and, if not satisfactory, they may be set aside." (*Garsed* v. *Beall,* 92 U. S. 694, 695, 23 L. Ed. 686.)

"The intervention was a proceeding in a court of equity, and that court may direct a verdict by a jury upon any single fact, or upon all the matters in dispute; but such a verdict is not binding upon the judgment of the court, it is advisory simply, and the court may disregard it entirely or adopt it either partially or *in toto.*" (*Kohn*

v. *McNulta*, 147 U. S. 238, 240, 37 L. Ed. 150, 13 S. Ct. 298.)

In *Ross-Meeham Brake Shoe F. Co.* v. *Southern Malleable I. Co.*, 72 Fed. 957, where a court-appointed receiver filed a bill to enforce a stock subscription and the defendant claimed that the demand was purely legal and could not be enforced in a court of equity because defendant would then be deprived of his constitutional right to a trial by jury, the court said: "The principle is that jurisdiction of the creditors' suit and the receivership draws to such jurisdiction all litigation necessary to completely wind up the insolvent corporation, and distribute its assets legally; and it has never been supposed that the constitutional provision for trial by jury in any manner restricted or affected jurisdiction of a chancery court as it existed at the time of the adoption of the constitution. This contention is therefore wholly untenable. * * *"

For a case involving the same principle see *Smith Engineering Co.* v. *Pray*, 58 F. (2d) 926, *aff'd* 68 F. (2d) 687, *cert. denied* 289 U. S. 733. In this case where the petitioner sought to foreclose a mechanic's lien the owner denied that the contractor had performed the services and brought a separate action for damages. When the court transferred this action for damages to the equity side and consolidated the two actions, the contractor claimed that this deprived it of its right to a jury trial and sought a writ of mandamus to compel the judge of the district court to proceed with a trial of the legal issues as at common law. This was denied under the rule where equity has once taken charge of the controversy it will proceed to fully determine that controversy.

As showing that Hawaii's legislature has not changed the common-law doctrine of equitable relief, section 12420, Revised Laws of Hawaii 1945, provides for the assessment

of the amount due upon foreclosure of a mortgage "without the intervention of a jury."

The fact that the execution of the note was put in issue does not give rise to any exception. (*Young* v. *Vail,* 29 N. M. 324, 222 Pac. 912.)

"* * * but counsel overlooks the fact that the existence of a present indebtedness on the part of the defendants is the very foundation of the right to foreclosure, the existence and ownership of the mortgage itself, in the absence of indebtedness, giving rise to no such right. Before awarding a foreclosure, it was an absolute necessity for the court, sitting as a chancellor, to determine whether or not the defendants were indebted to the plaintiff, and, if so, to what extent, as a basis for the decree and for the application of the proceeds of the sale to be made thereunder.

"The issue of indebtedness was not, therefore, one cognizant only in a court of law, but was an issue lying across the very threshold of the chancellor's jurisdiction to decree a foreclosure, even under the original equity practice, and the parties were not entitled to a jury for the trial thereof." (*Young* v. *Vail,* 29 N. M. 324, 222 Pac. 912.)

The chancellor, in instructing the jury that Mary Ing was not bound to pay to the Bakers the obligation set forth in the note and mortgage, was apparently under the impression that as Miss Ing had herself received no valuable consideration there was no liability to the Bakers but only to a bona fide purchaser for value without notice. This clearly was erroneous and was recognized as such by the chancellor when he changed his opinion and reached the conclusion that petitioner was entitled to a directed verdict against Miss Ing also.

The undisputed evidence shows that Miss Ing executed the note and mortgage to accommodate Reed and to obtain

forbearance from the Bakers in respect to their claim against Reed. As a matter of law, Reed's debt to the Bakers and the Bakers' implied agreement to forbear constituted adequate consideration for Miss Ing's executing the note and mortgage.

A pre-existing debt of one of two or more makers of a promissory note is sufficient consideration for all of the makers. (*Mulany* v. *Murray,* 68 Mont. 245, 216 Pac. 1105.) In the *Mulany* v. *Murray* case the defendant's husband had been indebted to the plaintiff by note which was renewed several times. In 1914 the note sued upon by the plaintiff was given in renewal of the 1909 note. Judgment was for plaintiff and the defendant appealed claiming that no consideration existed for her signature. In affirming the judgment the court said: "No consideration moving to the accommodating party is necessary to uphold accommodation paper (8 C. J. § 403, p. 255), and the fact that the defendant herein signed the note without receiving any part of the consideration, and for the purpose of lending her name to her husband, does not alter her situation. She is liable notwithstanding the plaintiff, at the time he took the note, knew her to be only an accommodation party. In other words, the fact that she is an accommodation maker gives rise to a duty on her part to the holder for value, no greater, no less, nor different than that imposed on the maker who received value. [Citing cases.] To uphold the note it is only necessary that one or more of the makers receive the consideration (Skagit State Bank v. Moody, 86 Wash. 286, 150 Pac. 425, L. R. A. 1916A, 1215) ; and the consideration for the note sued on, so far as James P. Murray and Gruwell are concerned, is the pre-existing indebtedness [Citing cases], and so far as the record discloses, the plaintiff Mulany is a holder for value [Citing cases]."

Similar holdings are: *Drake* v. *Moore,* 14 F. Supp. 89;
*McDonald Bros. Co.* v. *Koltes,* 155 Minn. 24, 192 N. W.
109; *Coal River Collieries* v. *Eureka Coal & Wood Co.,* 144
Va. 263, 132 S. E. 337, and *First National Bank of Walla
Walla* v. *Murray,* 138 Ore. 255, 6 P. (2d) 233.

The several other assignments of error are without
merit. For example, it is elementary that the chancellor's
jurisdiction and control over the case continued until he
had made a ruling on the motions for a new trial and for
a decree notwithstanding the verdict. Likewise, the court
did not err in entertaining and ruling upon the motion of
the Honolulu Savings as it was never permitted to with-
draw as petitioner nor were the Bakers substituted in lieu
thereof.

There is ample evidence to sustain the chancellor's
rulings and the decree is affirmed.

*H. Y. C. Choy* (*Fong, Miho, Choy & Chuck* on the
briefs) for plaintiff in error Mary C. Ing.

*R. G. Hogan* and *R. E. Stifel* (*Hogan & Dyer* and
*Anderson, Wrenn & Jenks* with them on the briefs) for
defendant in error Honolulu Savings & Loan Co., Ltd.