16 P.3d 827

**CITICORP MORTGAGE, INC.,**
Plaintiff–Appellee,

v.

Caroline BARTOLOME; Robin
C. Bartolome, Defendants–
Appellants,

and

John Does 1–20, Doe Corporations 1–20,
Doe Partnerships 1–20, Doe Associations
1–20, Doe Governmental Agencies 1–20,
Doe Entities 1–20, Defendants.

No. 21802.

Intermediate Court of Appeals of Hawai'i.

Nov. 22, 2000.

Gary Victor Dubin, Honolulu, on the briefs, for defendants–appellants.

William J. Wynhoff (Gerson Grekin & Wynhoff), Honolulu, on the briefs, for plaintiff–appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by LIM, J.

Defendants–Appellants Caroline Bartolome and Robin Bartolome (Appellants), who are mother and son,[1] appeal (1) the July 9, 1998 deficiency judgment in favor of Plaintiff–Appellee Citicorp Mortgage, Inc. (CMI) (the first appeal), and (2) the November 16, 1998 order and its December 10, 1998 judgment denying in part and granting in part Appellants' Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b) motion (the second appeal).

We dismiss the first appeal for lack of appellate jurisdiction. As for the second appeal, we affirm the December 10, 1998 judgment.

## I. BACKGROUND.

On or about November 22, 1995, Appellants executed and delivered a promissory note in the amount of $285,750 to North American Mortgage Company (North American), in a refinancing of a first mortgage with NOVUS Financial Corporation (NOVUS). As security for the note, Appellants executed and delivered to North American a new first mortgage on the residence they share in Kahului, Maui. By mesne assignments, the note and mortgage were assigned to CMI on April 23, 1996.

Appellants defaulted under the note, and CMI filed its complaint for foreclosure on May 20, 1997 in the circuit court of the second circuit.

On May 20, 1997, deputy sheriff Seward Smythe, Jr. ("the server") left the complaint and summons for each Appellant with Caroline Bartolome at the Appellants' shared residence.

---

1. On July 30, 1998, Caroline Bartolome was 64 years old, and Robin Bartolome was 31 years old.

Also on May 20, 1997, Caroline Bartolome filed her answer to the complaint *pro se*, denying CMI's claims and pleading her defenses under the Truth in Lending Act and Regulation Z.[2]

Robin Bartolome did not file an answer.

On June 10, 1997, CMI filed its motion for summary judgment and decree of foreclosure. On July 14, 1997, CMI filed a supplemental memorandum detailing its compliance with the Truth in Lending Act and Regulation Z.

Appellants did not file any opposition to the motion. Appellants did not appear at the hearing on the motion.

Following the September 16, 1997 hearing on the motion, the trial court filed its findings of fact, conclusions of law and order granting CMI's motion for summary judgment and decree of foreclosure on September 29, 1997. Accordingly, on September 29, 1997, the trial court entered judgment in favor of CMI and against Appellants. Pursuant to HRCP Rule 54(b), this judgment was entered as a final judgment.

No appeal was taken from the September 29, 1997 final judgment.

The property was sold to CMI at public auction for $250,000. The sale was confirmed on June 3, 1998 by an order granting CMI's motion for confirmation of sale and distribution of proceeds, for deficiency judgment, and for writ of possession. Judgment in favor of CMI, which certified the order as a final judgment, and a writ of possession, were also filed on June 3, 1998. As directed by the order, the property was conveyed directly to a third party, Federal National Mortgage (Fannie Mae).

No appeal was filed from the June 3, 1998 judgment.

On June 16, 1998, Appellants filed a HRCP Rule 60(b) motion to reconsider the June 3, 1998 judgment. The motion was denied by order filed on September 2, 1998.

On July 9, 1998, the trial court entered a deficiency judgment in favor of CMI. On August 10, 1998, Appellants filed a notice of appeal from this deficiency judgment (the first appeal).

On July 30, 1998, Appellants filed a HRCP Rule 60(b) motion to vacate and set aside all prior orders, decrees, judgments, and writs, or for a stay pending appeal. Appellants presented ten grounds for relief, all of which are included as issues in nine rubrics in this appeal.

HRCP Rule 60(b) (1999) provided:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audit a querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

---

2. 15 United States Code (U.S.C.) §§ 1601 *et seq.* is commonly referred to as the "Truth in Lending Act" (TILA), as implemented by 12 Code of Federal Regulations (CFR) 226, commonly referred to as "Regulation Z."

On November 16, 1998, the trial court denied Appellants' Rule 60(b) motion, but granted a temporary stay. Judgment on this order was filed December 10, 1998.

On December 16, 1998, Appellants filed a timely notice of appeal from the November 16, 1998 order and December 10, 1998 judgment (the second appeal). The first and second appeals were later consolidated by a Hawai'i Supreme Court order filed on December 29, 1998.

By order filed on January 19, 1999, the trial court extended the stay pending final disposition of the second appeal, conditioned on periodic payments by Appellants.

## II. STANDARD OF REVIEW.

■ "It is well-settled that the trial court has a very large measure of discretion in passing upon motions under Rule 60(b) and its order will not be set aside unless we are persuaded that under the circumstances of the particular case, the court's refusal to set aside its order was an abuse of discretion." *Paxton v. State*, 2 Haw.App. 46, 48, 625 P.2d 1052, 1054 (1981) (citation omitted).

■ An "abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party-litigant." *State v. Jackson*, 81 Hawai'i 39, 47, 912 P.2d 71, 79 (1996) (internal quotation marks and citations omitted).

■ However, with respect to motions under HRCP Rule 60(b)(4), alleging that a judgment is void,

[t]he determination of whether a judgment is void is not a discretionary issue. It has been noted that a judgment is void only if the court that rendered it lacked jurisdiction of either the subject matter or the parties or otherwise acted in a manner inconsistent with due process of law. Wright & Miller, Federal Practice and Procedure: *Civil* § 2862 (1973). Other authorities, cognizant of the extraordinary remedy afforded by the rule and the need to narrowly define it, have stated:

In brief, then, except for the rare case where power is plainly usurped, if a court has the general power to adjudi-

cate the issues in the class of suits to which the case belongs then its interim orders and final judgment, whether right or wrong, are not subject to collateral attack....

7 Moore's Federal Practice ¶ 60.25 (1980). *See also V.T.A. Inc. v. Airco, Inc.*, 597 F.2d 220 (1979); *In Re Four Seasons Securities Law[s] Litigation*, 525 F.2d 500 (10th Cir. 1975).

*In re Hana Ranch Co., Ltd.*, 3 Haw.App. 141, 146, 642 P.2d 938, 941–42 (1982). Moreover, "[i]n the sound interest of finality, the concept of void judgment must be narrowly restricted." *Dillingham Investment Corp. v. Kunio Yokoyama Trust*, 8 Haw.App. 226, 233, 797 P.2d 1316, 1320 (1990) (internal quotation marks and citation omitted).

## III. DISCUSSION.

Appellants make no arguments addressing their first appeal, because all of their points on appeal are with reference to the trial court's denial of their HRCP Rule 60(b) motion, which underlies their second appeal.

With respect to their second appeal, Appellants contend that the trial court erred in denying their HRCP Rule 60(b) motion because: (1) it had no personal jurisdiction over Robin Bartolome; (2) there occurred Truth In Lending Act violations, pursuant to 15 U.S.C. §§ 1601 *et seq.*, and unfair and deceptive banking practices, pursuant to Hawai'i Revised Statutes (HRS) § 480–12; (3) there were jurisdictional errors in the public auction sale of the property; (4) the Hawai'i judicial foreclosure system under HRS § 667–1 violates due process; (5) there was a complete absence of any admissible evidence supporting the granting of summary judgment; (6) Appellants were fraudulently induced into refinancing their residence with North American; (7) the default judgment against Robin Bartolome was the product of mistake, inadvertence, surprise, and/or excusable neglect; (8) Appellants' Truth in Lending Act and HRS § 480–12 claims and defenses were not adjudicated, in violation of HRCP Rule 54(b); and (9) the trial court failed to file written findings of fact, in violation of HRCP Rule 52.

A review of the briefs and the record show that these claims are all without merit.

### A. The First Appeal.

■ Taking up Appellants' first appeal, from the July 9, 1998 deficiency judgment, we consider whether it should be dismissed for lack of appellate jurisdiction.

Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(1) (1999), a notice of appeal must be filed "within 30 days after the date of entry of the judgment or order appealed from."

CMI contends that the September 29, 1997 final judgment on the order granting its motion for summary judgment and decree of foreclosure was the final judgment from which Appellants had to appeal within thirty days. CMI concludes that Appellants' notice of their first appeal, filed on August 10, 1998, over eleven months after the final judgment, was not timely and hence the first appeal should be dismissed for want of appellate jurisdiction. We agree.

■ The Hawai'i Supreme Court, in a case precisely on point, determined that

> in cases involving mortgage foreclosures, a judgment of foreclosure and order of sale is final and appealable although it contains provisions for the determination of matters incident to its administration and for disposition of the proceeds of the sale.

*Security Pacific Mortgage Corp. v. Miller*, 71 Haw. 65, 69, 783 P.2d 855, 857 (1989) (citations omitted). Accordingly, the supreme court held that the trial court's "Order Granting Summary Judgment and for an Interlocutory Decree of Foreclosure" was the final and appealable order which started the thirty-day period in which notice of appeal

had to be filed pursuant to HRAP Rule 4(a)(1). The appeal was dismissed for want of appellate jurisdiction because the defendants had appealed an order and judgment for distribution of proceeds and deficiency entered much later in the case.[3]

In their statement of jurisdiction for the first appeal, Appellants rely on *Hoge v. Kane I*, 4 Haw.App. 246, 663 P.2d 645 (1983). In *Hoge*, we held that "[i]n foreclosure cases which result in a deficiency, the last and final order which starts the clock running [for filing a notice of appeal] is usually the deficiency judgment." *Id.* at 247, 663 P.2d at 647.

According to the supreme court in *Security Pacific*, however, the appeal in *Hoge* concerned the *amount* of the deficiency, and not the plaintiff's *right* to receive it. Therefore, the supreme court held that

> where an appellant challenges the *right* of a party to obtain a deficiency judgment in a foreclosure case, he must take his appeal in a timely fashion from the order which finally determined the right to a deficiency. If, on the other hand, he challenges the *amount* of deficiency awarded in the deficiency judgment, he is entitled to take his appeal from "the last of the series of orders which collectively embrace the entire controversy," *Hoge v. Kane I*, which in that case would be the deficiency award.

*Security Pacific*, 71 Haw. at 71-72, 783 P.2d at 858 (emphases added, bold in the original).

Because Appellants make no argument on appeal regarding the amount of the deficiency judgment, the distribution of sales proceeds or the disposition of the real property, and because all of their arguments on appeal pertain to CMI's right to obtain foreclosure

---

**3.** We question whether the order and judgment for distribution of proceeds and deficiency appealed from in *Security Pacific Mortgage Corp. v. Miller*, 71 Haw. 65, 783 P.2d 855 (1989), should have been affirmed, rather than the appeal itself dismissed for lack of appellate jurisdiction. After all, the appeal from that order and judgment was timely and hence appellate jurisdiction was established as to that order and judgment. *Bacon v. Karlin*, 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986). The appeal simply failed to present cognizable issues on appeal with respect to the order and judgment appealed from, *Security Pa-*

*cific*, 71 Haw. at 71-72, 783 P.2d at 858, and because of this default, the order and judgment should have stood affirmed.

By the same token, we question whether the first appeal in this case should be dismissed for lack of appellate jurisdiction. We have appellate jurisdiction of the July 9, 1998 deficiency judgment because a timely notice of appeal was taken from that judgment. The first appeal simply fails to raise any cognizable issues with respect to the deficiency judgment and because of this default, the deficiency judgment should stand affirmed.

and a deficiency judgment, Appellants were required to appeal in a timely fashion from the September 29, 1997 final judgment on the order granting CMI's motion for summary judgment and decree of foreclosure. Because they did not, their first appeal from the deficiency judgment must be dismissed.[4]

■ We further note that Appellants' June 16, 1998 HRCP Rule 60(b) motion to reconsider did not toll the time for filing a notice of appeal. Although a HRCP Rule 60(b) motion may be considered a HRCP Rule 59(e) motion which suspends the finality of the judgment and tolls the time to appeal, such a HRCP Rule 60(b) motion must be made *within ten days* of entry of the subject judgment. *See Simpson v. Dep't of Land & Natural Resources*, 8 Haw.App. 16, 21, 791 P.2d 1267, 1272 (1990) (holding that "any motion made within ten days of entry of judgment which seeks a substantive change in the judgment will be considered a Rule 59(e) motion which suspends the finality of the judgment and tolls the time to appeal") (citation omitted).

■ Appellants' June 16, 1998 HRCP Rule 60(b) motion to reconsider was not made within ten days of the September 29, 1997 final judgment and order. Nor was it made within ten days of the June 3, 1998 judgment on the order for confirmation of sale, distribution of proceeds, deficiency judgment and writ of possession. Accordingly, Appellants' first appeal from the deficiency judgment must be dismissed for want of appellate jurisdiction. An appellant's failure to file a timely notice of appeal is a jurisdictional defect which cannot be waived by the parties or disregarded by the court in the exercise of its discretion. *Bacon v. Karlin*, 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986).

### B. The Second Appeal.

We are thus left to consider only the Appellants' second appeal, from the trial court's denial of their July 30, 1998 HRCP Rule 60(b) motion. Appellants claim that the trial court erred in denying this HRCP Rule 60(b) motion for nine different reasons. We will discuss each contention in turn.

### 1.

■ Appellants contend that the trial court erred in denying their HRCP Rule 60(b) motion because it lacked personal jurisdiction over Robin Bartolome. Appellants preserve this contention under HRCP Rule 60(b)(4).

HRCP Rule 60(b)(4) affords relief from a judgment on the basis that "the judgment is void":

The determination of whether a judgment is void is not a discretionary issue. It has been noted that a judgment is void only if the court that rendered it lacked jurisdiction of either the subject matter or the parties or otherwise acted in a manner inconsistent with due process of law.

*Hana Ranch*, 3 Haw.App. at 146, 642 P.2d at 941 (citation omitted). However, "[i]n the sound interest of finality, the concept of void judgment must be narrowly restricted." *Dillingham Investment*, 8 Haw.App. at 233, 797 P.2d at 1320.

Appellants argue that the trial court lacked personal jurisdiction over Robin Bartolome because service of the complaint and summons upon him was defective, in that (1) effective service was made only upon his mother (and codefendant) Caroline Bartolome; and (2) only one copy was left with her for both of them.

We find both arguments to be wholly without merit.

■ In order for a trial court to exercise personal jurisdiction over a defendant, the defendant must be served with a copy of the summons and the complaint pursuant to HRCP Rule 4(d). *See, e.g., Romero v. Star Markets, Ltd.*, 82 Hawai'i 405, 412, 922 P.2d 1018, 1025 (1996) (noting that the circuit court lacked personal jurisdiction over the respondents where no summons was issued and served on them as required by HRCP Rule 4).

HRCP Rule 4(d)(1) (1999) provided, in pertinent part, that service of the summons and complaint shall be made

---

4. See footnote 3.

[u]pon an individual other than an infant or an incompetent person, ... by delivering a copy of the summons and of the complaint to him personally *or in case he cannot be found by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein* [.]

(Emphasis added.)

The "Return and Acknowledgment of Service," filed on May 22, 1997 and signed by Caroline Bartolome, states that on May 20, 1997, the server served Robin Bartolome by leaving the complaint and summons with "Caroline Bartolome (Mother), a person of suitable age and discretion then residing at said party's usual place of abode[.]"

■ After hearing the testimony of, among others, Caroline Bartolome and the server, and receiving the returns and acknowledgments of service in evidence, the trial court found that the server left two copies of the complaint and summons with Caroline Bartolome—one for her and one for her son Robin—at their residence. We do not disturb this finding on appeal, even though Caroline Bartolome denied being served with anything. *State v. Stocker*, 90 Hawai'i 85, 90, 976 P.2d 399, 404 (1999) (an appellate court will not review determinations dependent upon the credibility of witnesses or the weight of evidence, as this is the exclusive province of the finder of fact).

Caroline Bartolome testified that her son Robin would have been away from home working at the time of service. Hence, it is evident that the server employed the second option under HRCP Rule 4(d)(1) in serving Robin Bartolome. Having been thus duly served, Robin Bartolome was subject to personal jurisdiction by the trial court.

■ Appellants argue, however, that because the server failed to exercise "due diligence" by first attempting to deliver a copy of the summons and complaint to Robin Bartolome personally, he rendered defective service. Appellants seem to think that use of the second option under HRCP Rule 4(d)(1) is conditioned upon the server first exercising "due diligence" in attempting service on the defendant personally. However, this be-

lief is completely unfounded, for this requirement is not articulated anywhere in HRCP Rule 4, or the HRCP in general, or in Hawai'i statutes or case law, or in federal interpretations of the cognate federal rule. Nor does it comport with reason and common sense.

Looking at the plain language of HRCP Rule 4(d)(1), we find no prerequisite of "due diligence." We find no such condition on this mode of service anywhere else in the HRCP. There is no State statute or appellate case imposing such a condition.

The federal counterpart to HRCP Rule 4(d)(1), Federal Rules of Civil Procedure (FRCP) Rule 4(d)(1) (1999), also does not contain such a prerequisite; it reads, in pertinent part:

Service shall be made ... [u]pon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein[.]

■ In construing Hawai'i rules of procedure patterned after federal rules, interpretations of the cognate federal rules by the federal courts are deemed "highly persuasive" by our appellate courts. *Harada v. Burns*, 50 Haw. 528, 532, 445 P.2d 376, 380 (1968). With respect to FRCP Rule 4(d)(1), Wright & Miller observe that "[c]ontrary to the practice in some states, this method of service is entirely optional, and plaintiff need not show an inability to obtain service by personal delivery before employing it." 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1096 (2000).

The United States Supreme Court, in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), held that the use of substituted service under FRCP Rule 4(d)(1) in a diversity case in the District of Massachusetts was proper, even though the law of Massachusetts, the residence of the defendant, required "in hand service" on the defendant. In so holding, the Supreme Court noted that "[FRCP] Rule 4(d)(1) is well designed to give actual notice[.]" *Id.* at

469 n. 11, 85 S.Ct. 1136. Apparently, the server in *Hanna* proceeded directly to serve the defendant's wife at their residence without first attempting service on the defendant. Of significance is the absence of any "due diligence" or other preliminary search or inquiry after the defendant. *Id.* at 461, 85 S.Ct. 1136.

In a holding reliant upon *Hanna*, FRCP Rule 4(d)(1) service was found to be proper, even though the cognate provision of the rules of procedure of the host state (New York) permits such service only if in-hand service cannot "be made with due diligence." *United States v. Scheiner*, 308 F.Supp. 1315, 1317 (S.D.N.Y.1970). In that case as well, there is no indication that the server first attempted personal service on the defendant or any preliminary search or inquiry of his whereabouts.

▪ In Hawai'i, "due diligence" is a requirement unique to HRS § 634-23,[5] which provides for service by publication. Because service by publication contemplates, *de facto*, no notice at all, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (noting that with respect to the defendant served via publication, "the odds that the information will never reach him are large indeed"), "due diligence" in trying to find the defendant before resorting to publication is a fair and obvious prerequisite. HRS § 634-23(2).

On the other hand, "due diligence" has no role under HRCP Rule 4(d)(1), because reference therein to the defendant's "dwelling house or usual place of abode" assumes due diligence has been exercised and the defendant has been found. The preliminary language in HRCP Rule 4(d)(1) not found in FRCP Rule 4(d)(1)—"in case he cannot be found"—refers not to "due diligence," but to

the common circumstance in which the defendant served through substituted service is not at home at the time of service.

▪ The general rule is that due process requires notice reasonably calculated to apprise the defendant of the action and thus afford the defendant an opportunity to defend. *Calasa v. Greenwell*, 2 Haw.App. 395, 399, 633 P.2d 553, 556 (1981). "However, '[t]he requirements of due process frequently vary with the type of proceeding involved.'" *Id.* (citation omitted).

Service on a person "of suitable age and discretion then residing" with the defendant is the rule's express solution to the due process problem. The HRCP Rule 4(d)(1) requirement that the recipient be "of suitable age and discretion" contemplates a maturity and judgment sufficient to ensure that the defendant, returning home, will thereupon receive the summons and complaint from his or her co-resident.

In this case, Robin Bartolome was at work and not at home at the time of service. The person "of suitable age and discretion" receiving the summons and complaint on his behalf was his mother (and codefendant) Caroline Bartolome. *A fortiori*, in this case, service reasonably calculated to give notice was provided and due process was satisfied. *Cf. Campbell v. Bartlett*, 975 F.2d 1569, 1575 (10th Cir.1992). We conclude that HRCP Rule 4(d)(1) does not contemplate a requirement of "due diligence," as Appellants contend.

2.

▪ Appellants contend, under HRCP Rule 60(b)(4), that the trial court erred in denying their HRCP Rule 60(b) motion because CMI committed Truth in Lending Act (TILA) violations pursuant to 15 U.S.C.

---

**5.** Hawai'i Revised Statutes (HRS) § 634-23(2) (1993) provides, in pertinent part, that

[i]f a defendant is unknown or does not reside within the State or if, after *due diligence*, the defendant cannot be served with process within the State, and the facts shall appear by affidavit to the satisfaction of the court, it may order that service be made as provided by section 634-24 [mail service or personal service outside the State] or by publication, as may be appropriate; provided that service by

publication shall not be valid unless, it is shown to the satisfaction of the court that service cannot be made as provided by section 634-24. The affidavit required by this paragraph shall set forth facts based upon the personal knowledge of the affiant concerning the methods, means, and attempts made to locate and effect personal service on the defendant and any other pertinent facts.

(Emphasis added.)

§§ 1601, *et seq.*, and unfair and deceptive banking practices pursuant to HRS § 480–12.[6] As far as we can make out, Appellants complain in this respect not about a lender's fee, but about a $13,000 payment to the original first mortgagee NOVUS on the refinancing.

Appellants fail to cite, however, any specific section of the Truth in Lending Act or HRS chapter (ch.) 480 that CMI may have violated. This is particularly problematic in light of the fact that 15 U.S.C. §§ 1601 *et seq.* contain nearly one hundred sections, and HRS ch. 480 contains over twenty-five sections.

■ Due to this lack of specificity, Appellants fail to provide discernible argument on this point. An appellate court does not have to address matters for which the appellant has failed to present discernible argument. HRAP Rule 28(b)(7) (1999) ("the appellant shall file an opening brief, containing ... [t]he argument, exhibiting clearly the points of fact and of law being presented, citing the authorities relied upon"); *CSEA v. Doe*, 88 Hawai'i 159, 174 n. 20, 963 P.2d 1135, 1150 n. 20 (App.1998) ("Appellant, however, fails to present discernible argument with respect to these allegations and this court, therefore, need not address those matters." (Citations omitted.)); *Bank of Hawai'i v. Shaw*, 83 Hawai'i 50, 52, 924 P.2d 544, 546 (App.1996) ("[Appellant's] appeal asserts numerous grounds but fails to provide discernible argument or discussion on many of the points. We will disregard a point of error if the appellant fails to present discernible argument on the alleged error." (Citation omitted.))

In addition, Appellants fail to cite to the record or otherwise provide specific and admissible evidence to back up—indeed, explicate—their claims regarding unfair and deceptive banking practices and TILA violations. For this further reason we may decline to address these issues. HRAP Rule 28(b)(3) (1999) ("the appellant shall file an opening brief, containing ... the facts material to consideration of the ques-

tions and points presented, with record references supporting each statement of fact or mention of trial proceedings"); *International Brotherhood of Electrical Workers v. Hawaiian Telephone Co.*, 68 Haw. 316, 322 n. 7, 713 P.2d 943, 950 n. 7 (1986) ("Counsel has no right to cast upon the court the burden of searching through a voluminous record to find the ground of an objection. It is counsel's duty to cite accurately the portions of the record supporting counsel's position." (Internal citation omitted.)); *cf. State v. Hoang*, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000) ("Because the factual basis of [appellant's] alleged point of error is not part of the record on appeal, this court has no basis upon which to rule on the merits of his claim." (Citation omitted.))

Accordingly, we can decline to review this point on appeal.

■ In any case, we observe that the TILA and HRS ch. 480 issues, implicating the validity of the underlying note and mortgage, were defenses against CMI's right to the foreclosure, to be properly brought in the trial court against CMI's motion for summary judgment and decree of foreclosure. Under *Security Pacific*, 71 Haw. at 71–72, 783 P.2d at 858, they were issues properly brought on appeal from the September 29, 1997 final judgment on that motion.

Because Appellants appealed instead from the July 9, 1998 deficiency judgment (the first appeal), their appeal from the trial court's denial of their HRCP 60(b) motion (the second appeal) on these issues appears to be an untimely attempt at a second bite at the apple. And indeed, both appeals expressly or impliedly present the same nine points. We do not believe this is a proper use of HRCP Rule 60(b). *Stafford v. Dickison*, 46 Haw. 52, 57 n. 4, 374 P.2d 665, 669 n. 4 (1962) ("It has been stated that a motion under [HRCP] Rule 60(b) is not a substitute for a timely appeal from the original judgment." (Citations omitted.)); *cf. Cuerva & Associates v. Wong*, 1 Haw.App. 194, 199, 616 P.2d 1017, 1021 (1980) ("The [HRCP] Rule 60(b)(6) motion contained nothing that [plaintiff] had not already argued before the court

---

6. HRS § 480–12 deems any contract in violation    of HRS chapter 480 void.

at the trial. It was merely [plaintiff's] method of asking the court to reconsider its directed verdict [upon which the plaintiff had previously but untimely moved for reconsideration]. In our view, it was a misuse of Rule 60(b)(6)."); *Hana Ranch*, 3 Haw.App. at 147, 642 P.2d at 942 (noting with respect to HRCP Rule 60(b)(6), "it ordinarily is not permissible to use this motion to remedy a failure to take an appeal." (Citation omitted.))

As a final point on this issue, we question whether Appellants properly brought their TILA and HRS ch. 480 issues under HRCP Rule 60(b)(4). That subsection applies only where the trial court "lacked jurisdiction of either the subject matter or the parties or otherwise acted in a manner inconsistent with due process of law." *Id.* at 146, 642 P.2d at 941. A determination under those laws that the note and mortgage were void and unenforceable, as Appellants urge, would not oust personal or subject matter jurisdiction. If it did, then the trial court would be *ipso facto* without jurisdiction to grant Appellants their relief. If this final point is indeed valid, then the only subsection remaining which could possibly apply would be HRCP Rule 60(b)(6), in which case our citations banning the use of that subsection as a remedy for failure to take a timely appeal become particularly pertinent.

### 3.

Appellants contend, under HRCP Rules 60(b)(3) and 60(b)(4), that the trial court erred in denying their Rule 60(b) motion because there were "jurisdictional errors" in the April 1998 public auction sale, in violation of HRCP Rule 17(a) [7] and their right to due process.

In support of this claim, Appellants make a somewhat confusing argument. Their reasoning seems to be as follows: (1) CMI was not a real party in interest as required by HRCP Rule 17(a); (2) CMI served as a "mere servicing agent" for Fannie Mae, the true real party in interest; and (3) CMI's "deception" rendered the sale "jurisdictionally void" and thus subject to Rule 60(b) reversal. We disagree.

CMI was indeed the real party in interest at all relevant times. CMI owned the note and mortgage throughout the proceedings, until the property was conveyed to Fannie Mae by commissioner's deed after the foreclosure sale, as indicated by a May 14, 1997 title report, and sworn to by an August 7, 1998 affidavit.

Furthermore, even if Fannie Mae owned the loan prior to the foreclosure sale, there was no jurisdictional problem, because HRCP Rule 17(a) specifically allows for ratification of an action by the real party in interest.[8] Fannie Mae expressly ratified the foreclosure action by CMI in an August 12, 1998 affidavit.

Fannie Mae's ratification of the foreclosure action belies Appellants' claims that there were jurisdictional errors in the public auction sale, and we conclude that the trial court did not err in this respect in denying Appellants' Rule 60(b) motion.

### 4.

Appellants' fourth contention, under HRCP Rule 60(b)(4), is that the trial court erred in denying their Rule 60(b) motion because the judicial foreclosure system in Hawai'i, pursuant to HRS § 667–1,[9] violates

7. Hawai'i Rules of Civil Procedure (HRCP) Rule 17(a) (1999) states, in pertinent part, that "[e]very action shall be prosecuted in the name of the real party in interest."

8. HRCP 17(a) (1999) states, in pertinent part:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and *such ratification*, joinder, or substitution *shall*

> have the same effect as if the action had been commenced in the name of the real party in interest.
> (Emphasis added).

9. HRS § 667–1 (1993) provides:

> The circuit court may assess the amount due upon a mortgage, whether of real or personal property, without the intervention of a jury, and shall render judgment for the amount awarded, and the foreclosure of the mortgage. Execution may be issued on the judgment, as ordered by the court.

due process. Appellants argue that the foreclosure process in Hawai'i results in inadequate prices for the properties sold at auction. When combined with what Appellants call (but do not define) "foreclosure blight," the process results in a "double recovery" for the lender who buys the property at auction and later receives a deficiency judgment. Because Appellants bring this issue under HRCP Rule 60(b)(4), we assume they conclude that this constitutes a denial of due process which renders the judgment void.

Here again, however, Appellants fail to make a discernible argument. They cite no apposite authority and make no coherent argument on the issue from cognizable precedent. We can discern only dimly the connection between due process concerns and their arguments about inadequate prices and "double recovery." This being so, we may decline to review the issue. HRAP Rule 28(b)(7) (1999) ("the appellant shall file an opening brief, containing . . . [t]he argument, exhibiting clearly the points of fact and of law being presented, citing the authorities relied upon"); *CSEA*, 88 Hawai'i at 174 n. 20, 963 P.2d at 1150 n. 20 (App.1998) ("Appellant, however, fails to present discernible argument with respect to these allegations and this court, therefore, need not address those matters." (Citations omitted.)); *Bank of Hawai'i*, 83 Hawai'i at 52, 924 P.2d at 546 (App.1996) ("[Appellant's] appeal asserts numerous grounds but fails to provide discernible argument or discussion on many of the points. We will disregard a point of error if the appellant fails to present discernible argument on the alleged error." (Citation omitted.))

Also, Appellants fail to support their position with anything resembling admissible evidence in the record. Their contentions regarding inadequate prices and "foreclosure blight" are nowhere supported by citations to the record or, for that matter, any form of cognizable evidence. We may thereupon likewise ignore the issues raised. HRAP Rule 28(b)(3) (1999) ("the appellant shall file an opening brief, containing . . . the facts material to consideration of the questions and points presented, with record references

supporting each statement of fact or mention of trial proceedings"); *International Brotherhood*, 68 Haw. at 322 n. 7, 713 P.2d at 950 n. 7 (1986) ("Counsel has no right to cast upon the court the burden of searching through a voluminous record to find the ground of an objection. It is counsel's duty to cite accurately the portions of the record supporting counsel's position." (Internal citation omitted.)); *Hoang*, 93 Hawai'i at 336, 3 P.3d at 502 (2000) ("Because the factual basis of [appellant's] alleged point of error is not part of the record on appeal, this court has no basis upon which to rule on the merits of his claim." (Citation omitted.))

■■■■■ When all is said and done, Appellants present what is in essence a bare allegation that HRS § 667-1 is unconstitutional. In reviewing the constitutionality of a statute, we consider several factors:

(1) legislative enactments are presumptively constitutional; (2) a party challenging a statutory scheme has the burden of showing unconstitutionality beyond a reasonable doubt; and (3) the constitutional defect must be clear, manifest, and unmistakable.

*SHOPO v. Soc. of Professional Journalists*, 83 Hawai'i 378, 389, 927 P.2d 386, 397 (1996) (citation and internal quotation marks omitted).

Hence, (1) HRS § 667-1 is presumptively constitutional and does not violate due process; (2) Appellants bear the burden of showing that HRS § 667-1 violates due process beyond a reasonable doubt; and (3) the violation must be clear, manifest and unmistakable. *Id.*

Appellants fail to meet their burden of proving a clear, manifest and unmistakable due process violation beyond a reasonable doubt. Appellants' due process arguments are unverified charges and allegations which fail to provide any specific evidence in the record or otherwise, and which fail to cite any applicable case law. They are clearly not up to the task of rebutting the presumption of constitutionality.

■■■■■ With respect to the basic requirements of due process:

Due process is not a fixed concept requiring a specific procedural course in every situation. Rather, due process is flexible and calls for such procedural protections as the particular situation demands. The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

*Bank of Hawai'i v. Kunimoto,* 91 Hawai'i 372, 388, 984 P.2d 1198, 1214 (1999) (citations omitted).

■ On the record before us, the judicial foreclosure system in Hawai'i, pursuant to HRS § 667-1, is not clearly, manifestly and unmistakably violative of due process. Considering the two basic elements of procedural due process—notice and the opportunity to be heard—Appellants were afforded due process.

Notice was given to both Appellants. Both Appellants were given a meaningful opportunity to be heard. But neither Appellant opposed or appeared at the hearing on CMI's motion for summary judgment and decree of foreclosure—which involved CMI's right to foreclosure relief under HRS § 667-1, the very issue with which Appellants take constitutional issue. Appellant Robin Bartolome did not even bother to file an answer to the complaint. Although given notice and an opportunity to be heard, Appellants simply did not avail themselves of their rights.

Finally, we again take issue with a transparent attempt to remedy an untimely appeal of a foreclosure decree by the expedient of a HRCP Rule 60(b) motion and appeal thereon. *Stafford,* 46 Haw. at 57 n. 4, 374 P.2d at 669 n..4 (1962) ("It has been stated that a motion under [HRCP] Rule 60(b) is not a substitute for a timely appeal from the original judgment." (Citations omitted.)); *cf. Cuerva,* 1 Haw.App. at 199, 616 P.2d at 1021 (1980) ("The [HRCP] Rule 60(b)(6) motion contained nothing that [plaintiff] had not already argued before the court at the trial. It was merely [plaintiff's] method of asking the court to reconsider its directed verdict [upon which the plaintiff had previously but untimely moved for reconsideration]. In our view, it was a misuse of Rule 60(b)(6)."); *Hana Ranch,* 3 Haw.App. at 147, 642 P.2d at

942 (noting with respect to HRCP Rule 60(b)(6), "it ordinarily is not permissible to use this motion to remedy a failure to take an appeal." (Citation omitted.))

Accordingly, we conclude that the trial court did not err in denying Appellant's Rule 60(b) motion on this point.

5.

■ Appellants contend, under HRCP Rule 60(b)(6), that the trial court erred in denying their Rule 60(b) motion because there was a complete absence of any admissible evidence supporting the trial court's grant of summary judgment.

■ In reviewing the trial court's denial of Appellants' Rule 60(b)(6) motion, we note that "Rule 60(b)(6) empowers the court in its discretion to vacate a judgment whenever that action is appropriate to accomplish justice." *Hana Ranch,* 3 Haw.App. at 147, 642 P.2d at 942. However,

[t]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests. *In particular, it ordinarily is not permissible to use this motion to remedy a failure to take an appeal.* However, this is not an inflexible rule and in unusual cases a party who has not taken an appeal may obtain relief on motion.

*Id.* (emphasis added). With respect to the exceptional "unusual cases," a party seeking relief under HRCP Rule 60(b)(6) after the time for appeal has run "must establish the existence of 'extraordinary circumstances' that prevented or rendered him unable to prosecute an appeal." *Id.* (citations omitted).

In this case, we find no "extraordinary circumstances" which precluded Appellants from raising their evidentiary objections, either below or on appeal.

Appellants were served with CMI's motion for summary judgment and decree of foreclosure, but filed no opposition to the motion and failed to appear at the hearing on the motion. In this appeal, Appellants raise no

factual or legal basis in mitigation of their failure to oppose below.

CMI's September 29, 1997 summary judgment and decree of foreclosure was a final, appealable judgment. As previously discussed, however, Appellants simply failed to appeal the judgment in a timely manner. In this HRCP Rule 60(b) appeal, Appellants raise no factual or legal basis for finding "extraordinary circumstances" precluding a timely and proper appeal.

We can therefore decline to consider the evidentiary objections in this appeal. We conclude that the trial court properly denied Appellants' motion for Rule 60(b)(6) relief.

6.

Appellants contend, under HRCP Rules 60(b)(1), 60(b)(3), 60(b)(4) and 60(b)(6), that the trial court erred in denying their HRCP Rule 60(b) motion because they were fraudulently induced into refinancing their residence, in violation of HRS § 480–12 and due process. We disagree.

First, HRS Rule 60(b)(1) is not applicable to fraudulent inducement in the underlying transaction. HRCP Rule 60(b)(1), addressing "mistake, inadvertence, surprise, or excusable neglect," exists to remedy some dereliction of the movant in the litigation itself; for example, failure to answer the complaint, *Dillingham Investment, supra; Pogia v. Ramos,* 10 Haw.App. 411, 876 P.2d 1342 (1994), failure to answer interrogatories, *Paxton, supra,* ineffective assistance of counsel, *City & County v. Bennett,* 2 Haw.App. 180, 627 P.2d 1136 (1981), or unauthorized settlement by counsel, *Hawai'i Housing Authority v. Uyehara,* 77 Hawai'i 144, 883 P.2d 65 (1994). HRCP Rule 60(b)(1) does not apply to defects in the underlying contract or transaction, as Appellants would have it in this point on appeal.

Second, HRCP Rule 60(b)(3) is similarly not applicable here. HRCP Rule 60(b)(3), addressing "fraud . . ., misrepresentation, or other misconduct of an adverse party," applies to situations in which a judgment is procured by illegitimate means employed in the litigation itself, not to situations in which the underlying contract is procured

by illegitimate means. *Kawamata Farms v. United Agri Products,* 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997) (in a case involving discovery abuse, holding that under HRCP Rule 60(b)(3), "the movant must, (1) prove . . . that the verdict was obtained through fraud, misrepresentation, or other misconduct, and (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense" (brackets, citations, and internal quotation marks omitted)).

Third, HRCP Rule 60(b)(4) is not applicable because HRCP Rule 60(b)(4), which grants relief if "the judgment is void," applies only where the court lacked subject-matter or personal jurisdiction, or otherwise acted in a manner inconsistent with due process of law. *Hana Ranch,* 3 Haw.App. at 146, 642 P.2d at 942 ("a judgment is void only if the court that rendered it lacked jurisdiction of either the subject matter or the parties or otherwise acted in a manner inconsistent with due process of law" (citation omitted)). This point on appeal does not allege any such defect or dereliction on the part of the trial court.

Fourth, HRCP Rule 60(b)(6) is not applicable for reasons previously discussed. No "extraordinary circumstances" precluded a timely and proper appeal on the fraudulent inducement issue. *Id.* at 147, 642 P.2d at 942 ("it ordinarily is not permissible to use [HRCP Rule 60(b)(6) ] to remedy a failure to take an appeal. However, this is not an inflexible rule and in unusual cases a party who has not taken an appeal may obtain relief on motion. . . . A party seeking relief under HRCP Rule 60(b)(6) after the time of appeal has run must establish the existence of 'extraordinary circumstances' that prevented or rendered him unable to prosecute an appeal" (citations omitted)).

Furthermore, we note that, under HRCP Rule 60(b), "clause (6) and the first five clauses are mutually exclusive and . . . relief cannot be had under clause (6) if it would have been available under the earlier clauses." *Calasa,* 2 Haw.App. at 397, 633 P.2d at 555 (citations omitted). This rule reinforces the restriction upon the applica-

tion of HRCP Rules 60(b)(1)–(5) to issues—such as mistake, newly discovered evidence, fraud, jurisdictional defect or defunct judgment—endemic to the litigation. Otherwise, if issues in the underlying transaction can be raised on appeal under any subsection of HRCP Rule 60(b) other than subsection (6), we would be encouraging appeals to remedy the failure to take a timely appeal by skirting the requisite showing of "extraordinary circumstances" under subsection (6).

■ In general, we observe that Appellants did not at any time marshal any cognizable evidence in the record to support their claim of fraudulent inducement. Bare allegations in a memorandum and an opening brief do not suffice. We can therefore completely ignore this point on appeal. HRAP Rule 28(b)(3) (1999) ("the appellant shall file an opening brief, containing . . . the facts material to consideration of the questions and points presented, with record references supporting each statement of fact or mention of trial proceedings"); *International Brotherhood*, 68 Haw. at 322 n. 7, 713 P.2d at 950 n. 7 (1986) ("Counsel has no right to cast upon the court the burden of searching through a voluminous record to find the ground of an objection. It is counsel's duty to cite accurately the portions of the record supporting counsel's position." (Internal citation omitted.)); *Hoang*, 93 Hawai'i at 336, 3 P.3d at 502 (2000) ("Because the factual basis of [appellant's] alleged point of error is not part of the record on appeal, this court has no basis upon which to rule on the merits of his claim." (Citation omitted.))

Even if Appellants' allegations of fraudulent inducement are taken at face value, they fall short of "clear and convincing" evidence of fraudulent inducement. *Honolulu Federal Savings & Loan Ass'n v. Murphy*, 7 Haw. App. 196, 202, 753 P.2d 807, 812 (1988) (holding that the standard of proving fraudulent inducement with respect to written contracts "is extremely high, and a written contract will be cancelled only in a clear case of fraud supported by clear and convincing evidence"

(citations omitted)). At a more fundamental level, they do not satisfy the elements necessary to prove fraudulent inducement. *Id.* at 201, 753 P.2d at 811 (the elements of fraudulent inducement are: "(1) a representation of material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to his damage" (brackets and citations omitted)).

The trial court did not err in denying Appellants' HRCP Rule 60(b) motion under HRCP Rule 60(b)(1), 60(b)(3), 60(b)(4) and 60(b)(6).

### 7.

Appellants contend, under HRCP Rules 60(b)(1) and 60(b)(6),[10] that the trial court erred in denying their HRCP Rule 60(b) motion because default judgment against Robin Bartolome was the product of mistake, inadvertence, surprise, and/or excusable neglect.

This contention is completely without merit, because no default judgment was ever entered against Robin Bartolome. Judgment against him was obtained by summary judgment, not by default judgment.

■ Even if default judgment was rendered against Robin Bartolome, the trial court did not abuse its discretion in deciding not to set aside the judgment on this basis.

■ Hawai'i courts follow the test promulgated in *BDM, Inc. v. Sageco, Inc.*, 57 Haw. 73, 77, 549 P.2d 1147, 1150 (1976) to determine whether to set aside a default judgment:

a motion to set aside a default entry or a default judgment may and should be granted whenever the court finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a wilful act.

would have been available under the earlier clauses." *Calasa v. Greenwell*, 2 Haw.App. 395, 397, 633 P.2d 553, 555 (1981). The issue here is clearly a HRCP Rule 60(b)(1) issue.

---

10. We are precluded from considering this issue under HRCP Rule 60(b)(6), because "clause (6) and the first five clauses are mutually exclusive and . . . relief cannot be had under clause (6) if it

Furthermore, if a movant fails to meet any one prong of the test, a trial court does not abuse its discretion in refusing to set aside a default judgment. *See, e.g., Park v. Tanaka,* 75 Haw. 271, 281, 859 P.2d 917, 922 (1993) (no meritorious defense); *Dillingham Investment,* 8 Haw.App. at 236, 797 P.2d at 1321 (inexcusable neglect and wilful act).

In this case, we conclude that Robin Bartolome's failure to answer the complaint or otherwise appear prior to the entry of summary judgment (or, the alleged default judgment) was indeed the product of "inexcusable neglect."

■■■ Appellants argue that Robin Bartolome's failure to appear and answer was the product of excusable neglect, because he has "no legal knowledge or training and is lacking even a high school education."

We have firmly held, however, that "the weight of authority has not recognized ignorance of the law ... to be excusable neglect justifying the invocation of relief under *HRCP* Rule 60(b)(1)." *Pogia,* 10 Haw.App. at 416, 876 P.2d at 1345 (brackets, citation, and internal quotation marks omitted) (italics in the original).

In light of our holding in *Pogia,* Robin Bartolome's claim that his failure to answer the complaint or otherwise appear was excusable neglect because of his lack of education and legal knowledge must fail. We conclude, therefore, that the trial court did not abuse its discretion in denying Appellants' HRCP Rule 60(b) on this issue.

8.

Appellants contend, under HRCP Rule 60(b)(6), that the trial court erred in denying their HRCP Rule 60(b) motion, because Appellants' TILA and HRS § 480–12 claims and

defenses have not yet been adjudicated, in violation of HRCP Rule 54(b).[11]

First of all, this point on appeal does not make much sense. The upshot of Appellants' claim of noncompliance with HRCP Rule 54(b) is a lack of appellate jurisdiction and dismissal of their appeal. *Jenkins v. Cades Schutte Fleming & Wright,* 76 Hawai'i 115, 117, 869 P.2d 1334, 1336 (1994). In that event, our lack of jurisdiction would arguably prevent us from affording any relief of any kind to Appellants with respect to their TILA and HRS § 480–12 claims below.

We discern that this point on appeal is, in essence, a reiteration of Appellants' claim that the trial court erroneously denied their HRCP Rule 60(b) motion with respect to their TILA and HRS § 480–12 claims. We previously rejected this claim in subsection 2. of this discussion, and reject it again here. That Appellants might yet maintain a separate lawsuit on those bases, as argued in their opening brief, does not affect the propriety of the trial court's action in this case.

The trial court properly denied Defendants' motion for Rule 60(b)(6) relief on this issue.

9.

■■■ For their final point on appeal, Appellants contend that the trial court erred in refusing to file written findings of fact underlying its denial of their HRCP Rule 60(b) motion, in violation of HRCP Rule 52. This argument is wholly without merit.

Rule 52(a) (1999) begins by requiring that "[i]n all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon[ .]" However, it ends with the statement "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 *or any other motion*

---

**11.** HRCP Rule 54(b) (1999) provides:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

except as provided in Rule 41(b)[involuntary dismissal]." (Emphasis added.) The trial court made its decision on a Rule 60(b) *motion*, thus it was not required to issue findings of fact. Appellants' last contention fails.

## IV.  CONCLUSION.

Based on the foregoing, Appellants' first appeal, of the July 9, 1998 deficiency judgment, is dismissed for lack of appellate jurisdiction. With respect to their second appeal, the December 10, 1998 judgment is affirmed.

